AO 91 (Rev. 11/11)  Criminal Complaint

| | | | |
|---|---|---|---|
| AUSA: | Jeanine Brunson | Telephone: | (313) 226-9597 |
| Special Agent: | Christopher S. Pennisi | Telephone: | (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.
Kadeem Jackson

Case: 2:23−mj−30447
Assigned To : Unassigned
Assign. Date : 11/3/2023
CMP: USA v JACKSON (MAW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 2, 2023__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Brandished a firearm in relation to a crime of violence |
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher S. Pennisi, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: November 3, 2023

_____
*Judge's signature*

City and state: Detroit, MI

Hon. Elizabeth A. Stafford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Christopher S. Pennisi, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I have been employed as a Special Agent of the Federal Bureau of Investigation for eighteen years. I am currently assigned to the Violent Crime Squad in the Detroit Division of the FBI.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2501(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

3. I have investigated federal violations concerning crimes of violence and firearms. I have gained experience through training and everyday work related to these types of investigations.

4. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

5.      This affidavit is also made in support of a criminal complaint charging KADEEM MAURICE JACKSON with taking a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119.

6.      This affidavit is also made in support of a criminal complaint charging JACKSON with use of a firearm (discharge) in relation to a crime of violence (carjacking) in violation of 18 U.S.C. § 924(c)(1)(A).

7.      Finally, this affidavit is made in support of a criminal complaint charging JACKSON with possession of a firearm after being convicted of a crime for which punishment exceeds one year in violation of 18 U.S.C. § 922(g).

## II.     PROBABLE CAUSE

8.      On November 2, 2023, victims BZ and KB were asked by an acquaintance known to them as "DC" to drive the DC's cousin, later identified as KADEEM MAURICE JACKSON, from West Virginia to Detroit.  DC promised to pay BZ and KB $200 in exchange for taking JACKSON to Detroit.

9.      BZ and KB agreed to drive JACKSON, in a white Toyota Rav 4 that KB had rented a week prior.  The RAV 4 was registered in West Virginia and had a vehicle identification number of 2T3W1RFV6MW113970.

10. During the drive, JACKSON sat in the rear of the car behind the driver's seat, KB drove and BK sat in the front passenger seat. When they arrived in Detroit, at approximately 6 or 6:30 pm, JACKSON had the destination mapped on his phone and he directed KB on where to make turns.

11. Once they arrived at their destination, nearby 4xxx Burlingame Street in the city of Detroit, JACKSON began calling the people that he thought were going to meet him. While they were waiting, KB climbed into the passenger seat to sit on BZ's lap. The car was parked but it remained running with the keys in the center console as it had a push-to-start ignition that only needed the keys in proximity to the ignition to continue functioning.

12. JACKSON could not reach anyone on the phone and began getting agitated. At some point, JACKSON drew a loaded handgun and pointed it at BZ and KB. JACKSON then demanded the car. All 3 exited the car and then JACKSON also demanded BZ's cellular phone.

13. BZ refused to surrender the phone and JACKSON hit BZ in the face hard enough with his fist that he split BZ's lip open and knocked BZ down, which resulted in lacerations to BZ's hands.

14. JACKSON then got into the driver's seat of KB's Rav 4 and drove off. KB and BZ ran down the street to a house and convinced the occupants to call 911. The call occurred at approximately 7:07 pm.

15. Detroit Police officers responded and interviewed BZ and KB. The two victims described the person that carjacked them as a light skinned black male approximately six feet tall, 175 pounds with a thin moustache, shoulder length dreadlocks and carrying a silver handgun.

16. Responding police officers also searched the surrounding area for KB'S car.

17. At approximately 10:30 pm, the occupied car was located in the vicinity of the intersection of Harper and Whittier in Detroit and placed under surveillance by law enforcement. The occupant eventually exited the vehicle and entered the liquor store located at 16xxx Harper. Police entered the store and took that occupant, later identified as KADEEM MAURICE JACKSON, into custody.

18. At the time he was arrested, JACKSON was a six foot tall, light skinned black male of approximately 175 pounds with a thin moustache and shoulder length dreadlocks which matched the description BZ and KB provided of the person that hit BZ and took KB's car at gunpoint.

19. During a search incident to arrest, the officers located a loaded SCCY CPX-2 9mm handgun in JACKSON' waistband. The gun had a teal colored frame and a gray slide similar to the gun that BZ had described to the police officers who responded to the 911 call following his carjacking. The keys to the carjacked Toyota Rav 4 were found in JACKSON's pocket.



20.     A few hours after JACKSON'S arrest, BZ and KB were shown a live lineup consisting of JACKSON and 5 other males of similar race, age, height, weight and hair style.  BZ nearly immediately identified JACKSON as the person who brandished a firearm, carjacked him and his companion, and hit him a few hours prior.

21.     On February 16, 2011, JACKSON was convicted of felony firearm in Michigan's Third Circuit court.  On June 26, 2017, he was convicted of felony first degree home invasion in Michigan's Sixth Circuit Court and sentenced to 51 months to 40 years in prison.  On August 23, 2017, he was again convicted of felony first degree home invasion in Michigan's Sixth Circuit Court and sentenced to 51 months to 40 years in prison.

22. I have consulted with an Interstate nexus expert with the Bureau of Alcohol Tobacco and Firearms. That expert has determined that the SCCY CPX-2 9mm handgun found in JACKSON'S waistband was manufactured outside the state of Michigan. Therefore, the firearm crossed a state line prior to JACKSON possessing it.

23. In addition, the SCCY CPX-2 9mm handgun found in JACKSON'S waistband had been reported stolen in West Virginia, on October 21, 2023.

24. Based on the Vehicle Identification Number assigned to KB'S Toyota Rav 4, it was manufactured in Canada.

### III. CONCLUSION

25. On November 2, 2023, JACKSON took a car from victims BZ and KB at gunpoint and after having physically attacked BZ.

26. At the time JACKSON was arrested on November 2, 2023, he had been convicted of three felonies, and had been sentenced to prison terms of more than one year on two of those felony convictions.

27. The firearm JACKSON possessed was manufactured in Florida. Therefore, it travelled in was "transported in interstate commerce" as recited in 18 U.S.C. § 924.

28. The Toyota Rav 4 that JACKSON took at gunpoint, and through the use of force, violence, and intimidation was manufactured in the country of

Canada. Therefore, the vehicle was "transported in interstate commerce" as recited in 18 U.S.C. § 2119.

29. Based on the above information, probable cause exists that KADEEM MAURICE JACKSON, took a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119, brandished a firearm in relation to a crime of violence (carjacking) in violation of 18 U.S.C. § 924(c) and possessed a firearm knowing that he had been previously convicted of a crime for which the punishment exceeds one year, in violation of 18 U.S.C. § 922(g).

30. In consideration of the foregoing, I respectfully request that this Court issue a complaint against KADEEM JACKSON for violations of 18 U.S.C. §§ 2119, 924(c) and 922(g).

31. Further in consideration of the foregoing, I respectfully request that this court issue an arrest warrant for KADEEM JACKSON for violations of 18 U.S.C. §§ 2119, 924(c) and 922(g).

Respectfully submitted,

_____
Christopher S. Pennisi
Special Agent, FBI

Sworn to before me and signed in my presence and/or by reliable electronic means.

_____
Hon. Elizabeth A. Stafford
United States Magistrate Judge

Dated:   November 3, 2023